**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **VICTORINO LOPEZ**, **JORGE MARTINEZ**, and **MARIO DOMINGUEZ**, on behalf of themselves and all other employees similarly situated, known and unknown, | Civil Action |
| Plaintiffs, | |
| v. | No. |
| **B.B.Q. PATIO, SP, INC.**, an Illinois corporation, **STAVROULA PSIHOGIOS**, individually, and **PERIKLES PSIHOGIOS**, individually, | |
| Defendants. | JURY DEMAND |

**COMPLAINT**

By and through their attorneys of record and on behalf of themselves and all other similarly situated employees, known and unknown, the plaintiffs, VICTORINO LOPEZ, JORGE MARTINEZ, and MARIO DOMINGUEZ, (the "Plaintiffs") hereby complain of the defendants, B.B.Q. PATIO, SP, INC., an Illinois corporation, STAVROULA PSIHOGIOS, individually, and PERIKLES PSIHOGIOS, (the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiffs allege as follows:

I. **INTRODUCTION**

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiffs and other similarly situated employees of the Defendants (the "Collective Class") time and one-half compensation for the overtime (in excess of 40 in any given week) hours they worked. In Count I, the Plaintiffs bring claims pursuant to Section 216(b) of the FLSA.

2. In Count II, the Plaintiffs bring supplemental claims under the Illinois Minimum Wage Law, 829 ILCS 105/1 *et seq*. and, in Count III, supplemental claims under the Chicago Minimum Wage Ordinance ("CMWO") Chicago Municipal Code (Ill.) § 1-24-010 *et seq*.

II.   **THE PARTIES**

3. The Plaintiffs are all individuals who are domiciled in Illinois and who reside within the Northern District of Illinois.

4. The following defendants are individuals who are domiciled in Illinois and who reside within the Northern District of Illinois: a) STAVROULA PSIHOGIOS; and b) PERIKLES PSIHOGIOS.

5. The defendant, B.B.Q. PATIO, SP, INC. ("BBQ PATIO"), is an Illinois corporation whose: a) registered office is located at or near 3256 S. Ashland Avenue, Chicago, IL 60708; and b) principal place of business was located at or near 3256 S. Ashland Avenue, Chicago, IL 60708 at all times relevant to this action.

III.   **JURISDICTION AND VENUE**

6. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

7. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

8. Further, venue is proper pursuant to 28 U.S.C. § 1391, because BBQ PATIO had its principal place of business, at or near 3256 S. Ashland Avenue, Chicago, IL 60708 at all times relevant to this action.

IV. **COLLECTIVE ACTION UNDER THE FLSA**

9.    The Plaintiffs bring this case as a Collective action under the FLSA on behalf of themselves and all known and unknown similarly situated employees (the "Collective Class") and, in accordance with Section 16(b) of the FLSA, the Plaintiffs have given written consent to bring such an action (attached as group **Exhibit A**).

10.    The Collective Class is defined as: **all current and former employees of the Defendants who were/are paid on an hourly basis, who have worked more than 40 hours in at least one week and/or who could be allowed to work more than 40 hours in any given week now or in the future.**

V. **GENERAL ALLEGATIONS**

11.    At all times relevant to this action, the Defendants owned and operated a restaurant at or near 3256 S. Ashland Avenue, Chicago, IL 60708 commonly known as "BBQ Patio."

12.    The plaintiff, VICTORINO LOPEZ, was employed by the Defendants as a cook and delivery driver at their BBQ Patio restaurant, from 1998 until his employment was terminated on or about September 19, 2018.

13.    During the course of his employment, VICTORINO LOPEZ typically worked about 63 hours per week for the Defendants.

14.    The Defendants paid VICTORINO LOPEZ for his labor with a combination of cash and checks: the Defendants paid VICTORINO LOPEZ $200.00 per week by check, and about $556.00 per week in cash, making his total compensation each week about $756.00.

15.    It follows that VICTORINO LOPEZ's de facto hourly rate was about $12.00 per hour.

3

16.     The Defendants did not provide VICTORINO LOPEZ with pay stubs or check stubs.

17.     However, VICTORINO LOPEZ observed that the Defendants generated pay stubs along with the $200.00 checks they paid him each week (see above), but he also observed that these pay stubs falsely indicated he had worked far fewer hours than he actually had.

18.     The Defendants required that VICTORINO LOPEZ cash the $200.00 checks (see above) at their restaurant and, as a result, the Defendants never gave VICTORINO LOPEZ any paper record of his pay or the number of hours he worked each week.

19.     During the course of their employment, the Defendants paid JORGE MARTINEZ and MARIO DOMINGUEZ in a manner that was similar to the manner in which they paid VICTORINO LOPEZ.

20.     However, the Defendants did not pay JORGE MARTINEZ and MARIO DOMINGUEZ with a combination of cash and checks; the Defendants paid them in cash.

21.     The Defendants did not provide checks to JORGE MARTINEZ and MARIO DOMINGUEZ each week like they provided to VICTORINO LOPEZ (see above).

22.     On several occasions, when JORGE MARTINEZ and MARIO DOMINGUEZ needed to prove that they were employed, the Defendants provided them with check stubs for that purpose – but the check stubs falsely indicated that they worked far fewer hours than they actually did, and falsely indicated that they were paid less money than they actually were.

23.     The Defendants paid JORGE MARTINEZ and MARIO DOMINGUEZ at the rate of $12.00 per hour.

4

24.    The Defendants never paid the Plaintiffs time and one-half overtime compensation for the hours they worked in excess of 40 each week.

25.    The Defendants paid the Collective Class members in a manner that was similar to that in which they paid the Plaintiffs.

26.    The Defendants never paid the Collective Class members time and one-half overtime compensation for the hours they worked in excess of 40 each week.

27.    At all times relevant to this action, the Defendants did not use a punch clock system, biometric log-in system or any other system that allowed the Plaintiffs and the Collective Class members to log their own work time.

28.    Upon information and belief, the Defendants: a) inaccurately logged the work time of the Plaintiffs and the Collective Class members – falsely indicating that they had worked far fewer hours than they actually had; or b) failed to contemporaneously log the work time of the Plaintiffs and the Collective Class members altogether.

29.    BBQ PATIO had gross receipts in excess of $500,000.00 in: a) 2014; b) 2015; c) 2016; d) 2017; and e) 2018.

30.    At all times relevant to this action, STAVROULA PSIHOGIOS had the power to: a) direct the Plaintiffs' work and that of the Collective Class members; b) set the Plaintiffs' work schedules and those of the Collective Class members; c) access and review the Plaintiffs' work time and payroll records and those of the Collective Class members; d) control the Defendants' human resources and payroll functions relative to the Plaintiffs and the Collective Class members; and e) hire and fire the Plaintiffs and the Collective Class members.

31.     At all times relevant to this action, on a day-to-day basis STAVROULA PSIHOGIOS: a) directed the Plaintiffs' work and that of the Collective Class members; b) set the Plaintiffs' work schedules and those of the Collective Class members; b) maintained the Plaintiffs' work time and payroll records and those of the Collective Class members; c) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiffs and the Collective Class members.

32.     At all times relevant to this action, PERIKLES PSIHOGIOS had the power to: a) direct the Plaintiffs' work and that of the Collective Class members; b) set the Plaintiffs' work schedules and those of the Collective Class members; c) access and review the Plaintiffs' work time and payroll records and those of the Collective Class members; d) control the Defendants' human resources and payroll functions relative to the Plaintiffs and the Collective Class members; and e) hire and fire the Plaintiffs and the Collective Class members.

33.     At all times relevant to this action, on a day-to-day basis PERIKLES PSIHOGIOS: a) directed the Plaintiffs' work and that of the Collective Class members; b) set the Plaintiffs' work schedules and those of the Collective Class members; b) maintained the Plaintiffs' work time and payroll records and those of the Collective Class members; c) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiffs and the Collective Class members.

34.     At all times relevant to this action, the Defendants operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA.

35.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiffs' "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the

Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

36.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiffs' "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

37.     At all times relevant to this action, the Plaintiffs were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

38.     At all times relevant to this action, the members of the Collective Class were/are "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

39.     At all times relevant to this action, the Plaintiffs were "employees" of the Defendants within the meaning of Section 3(d) of the IMWL.

40.     At all times relevant to this action, the Plaintiffs were "covered employees" within the meaning of Section 1-24-010 of the CMWO.

41.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiffs' "employer" within the meaning of Section 1-24-010 of the CMWO.

42.     During the course of their employment by the Defendants, the Plaintiffs and the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to perishable produce, poultry, pork, beef, canned and bottled beverages, drinking straws and paper goods.

43. During the course of their employment by the Defendants, the Plaintiffs and the Collective Class were/are not exempt from the maximum hour (overtime) provisions of the FLSA, the IMWL and/or the CMWO.

44. The Plaintiffs were encouraged and allowed to work through their lunch breaks and eat while working.

## COUNT I
## (Violation of the FLSA)

45. The Plaintiffs re-allege the foregoing paragraphs.

46. Among other ways, the Defendants violated the FLSA by:

    a. failing to pay the Plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates for the overtime hours (in excess of 40 in any given week) they worked;

    b. failing to provide the Plaintiffs with pay stubs that accurately listed their respective, hourly wage rates and the number of hours they worked each week;

    c. failing to accurately record the number of hours that the Plaintiffs worked each week; and

    d. failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the FLSA.

47. Among other ways, the Defendants also violated, and continue to violate, the FLSA by:

    a. failing to pay the Collective Class members at rates not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

    b. failing to provide the Collective Class members with pay stubs that accurately listed/list their respective hourly wage rates and the number of hours they worked/work each week;

    c.  failing to accurately record the number of hours that the Collective Class members worked/work each week; and

    d.  failing to hang and display a poster in a prominent location accessible to the Collective Class members, which poster would have informed the Collective Class members of their rights under the FLSA.

48.    The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

49.    As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiffs and the Collective Class members were damaged in that they suffered pecuniary loss.

50.    The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiffs, on behalf of themselves and the Collective Class, pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B.  statutory liquidated damages as allowed by the FLSA;

C.  pre- and post-judgment interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## COUNT II
## (Violation of the IMWL)

51.     The Plaintiffs re-allege the foregoing paragraphs.

52.     Any and all Collective Class members who join this action under the "opt-in"
procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this
Count II.

53.     Among other ways, the Defendants violated the IMWL by:

   a.   failing to pay the Plaintiffs at a rate not less than one and one-half times
        their respective, regular, hourly rates for the overtime hours they
        worked;

   b.   failing to provide the Plaintiffs with pay stubs that accurately listed their
        respective, hourly wage rate and the number of hours they worked each
        week;

   c.   failing to accurately record the number of hours that the Plaintiffs
        worked each week; and

   d.   failing to hang and display a poster in a prominent location accessible to
        the Plaintiffs, which poster would have informed the Plaintiffs of their
        rights under the IMWL.

54.     The Defendants were aware or should have been aware of their obligations
under the IMWL, but nevertheless attempted to circumvent its provisions.

55.     As a direct and proximate result of the Defendants' violation of the IMWL, the
Plaintiffs were damaged in that they suffered pecuniary loss.

56.     The Defendants failed to take affirmative steps to ascertain their obligations
under the IMWL.

WHEREFORE the Plaintiffs pray for judgment in their favor and against the
Defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiffs for each hour the Plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiffs at a rate not less than one and one-half times their respective, regular, hourly rates (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B.  statutory punitive damages as allowed by the IMWL;

C.  pre- and post-judgment interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the CMWO)

57.     The Plaintiffs re-alleges the foregoing paragraphs.

58.     Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count III.

59.     Among other ways, the Defendants violated the CMWO by:

a.  failing to pay the Plaintiffs at a rate not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

b.  failing to pay the Plaintiffs at a rate not less than the applicable, Chicago minimum wage rate in certain weeks;

c.  failing to provide the Plaintiffs with pay stubs that accurately listed their respective, hourly wage rates and the respective number of hours they worked each week;

d.  failing to accurately record the number of hours that the Plaintiffs worked each week; and

e.  failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the CMWO.

11

60.     The Defendants were aware or should have been aware of their obligations under the CMWO, but nevertheless attempted to circumvent its provisions.

61.     As a direct and proximate result of the Defendants' violation of the CMWO, the Plaintiffs were damaged in that they suffered pecuniary loss.

62.     The Defendants failed to take affirmative steps to ascertain their obligations under the CMWO.

WHEREFORE the Plaintiffs pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A.  damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiffs for each hour the Plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiffs at a rate not less than one and one-half times their regular, hourly rate (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B.  damages in an amount equal to the unpaid minimum wages due and owing to the Plaintiffs for each hour the Defendants failed to pay the Plaintiffs at a rate not less than the applicable, Chicago minimum wage rate;

C.  treble damages as allowed by the CMWO;

D.  pre- and post-judgment interest on all amounts awarded;

E.  attorneys' fees, together with costs of suit and collection; and

F.  such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiffs demand a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

/s/Paul Luka
Attorney for Plaintiffs

Paul Luka
paul@alexmendozalaw.com
MENDOZA LAW, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 508-6010 (voice AND fax)

13

# EXHIBIT A

## **CONSENT TO BE A PARTY PLAINTIFF**

The undersigned hereby authorizes and engages Alex Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against B.B.Q. PATIO, SP, INC., STAVROULA PSIHOGIOS, PERIKLES PSIHOGIOS, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

_____
Print Name

## **CONSENT TO BE A PARTY PLAINTIFF**

The undersigned hereby authorizes and engages Alex Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against B.B.Q. PATIO, SP, INC., STAVROULA PSIHOGIOS, PERIKLES PSIHOGIOS, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

*Jorge Martinez*
Signature

*Jorge Martínez*
Print Name

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Alex Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against B.B.Q. PATIO, SP, INC., STAVROULA PSIHOGIOS, PERIKLES PSIHOGIOS, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_Mario Dominguez_
Signature

_Mario Dominguez_
Print Name